# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL WAYNE, : | |
| Plaintiffs, : | |
| : | CIVIL ACTION |
| v. : | NO. 08-4899 |
| : | |
| THE GLEN MILLS SCHOOLS, : | |
| Defendant. : | |

## MEMORANDUM OPINION AND ORDER

**Rufe, J.**                                                                                         **May 20, 2010**

Before the Court is Defendant The Glen Mills Schools' Motion for Summary Judgment. Defendant is seeking judgment as to Plaintiff's claims that Defendant, his former employer, discriminated against him on the basis of his race (African-American) when it terminated his employment following his arrest for possession of marijuana. For the following reasons, Defendant's Motion is granted.

**Factual Background**

Defendant, The Glen Mills Schools, is a residential school located in Delaware County, Pennsylvania, which serves delinquent juveniles ages fourteen to twenty-one years.[1] Defendant hired Plaintiff, Michael Wayne, as a Counselor/Teacher on May 12, 1992, and promoted him to the position of Senior Counselor, a supervisory position, in 1998.[2] Beginning in 1998, as an essential employee, Plaintiff and his family were provided free housing on the school grounds.

---

[1] Aff. of Garrison D. Ipock, at 1-2 (attached as Exh. A to Def.'s Mot. for Summ. J.).

[2] Compl. ¶ 8.

On August 31, 2007, Plaintiff was a customer in a convenience store when local law enforcement officers executed a search warrant of the store.[3] While Plaintiff was leaving the store, officers searched him and subsequently arrested him for possession of a small amount of marijuana.[4] Later that evening, Plaintiff contacted his supervisor, James Welsh, to inform him of the arrest.[5] During that telephone call, Plaintiff admitted that he had, in fact, been in possession of marijuana. On September 5, 2007, Defendant suspended Plaintiff without pay,[6] and the next day Defendant terminated Plaintiff's employment.[7] Defendant's Managing Director, Garrison Ipock, made the decision to terminate Plaintiff. Mr. Ipock believed this decision was consistent with Defendant's policy on illegal drug activity and his own intent to implement a "no-tolerance" policy regarding staff drug use.[8] When Plaintiff was terminated from his employment, he also lost his employer-provided housing.

On October 14, 2008, Plaintiff timely filed a Title VII suit against Defendant, which pled that Defendant intentionally discriminated against Plaintiff by discharging him on the basis of his race in violation of 42 U.S.C. § 2000e-2(a) (*i.e.*, a disparate treatment claim). In support of his disparate treatment claim, Plaintiff alleged that all of Defendant's African-American employees

---

[3] Compl. ¶ 8.

[4] Id.

[5] Id.

[6] Id.

[7] Id.

[8] Aff. of Garrison D. Ipock, at 2. Mr. Ipock believed that Plaintiff's possession of marijuana was "utterly inconsistent with our teachers' credibility, as they try to persuade our students that they may not engage in such illegal behavior themselves." Id.

that were charged and/or convicted of drug offenses were promptly terminated, whereas several Caucasian employees who were arrested for drug and non-drug offenses were not discharged or not immediately discharged.[9]

**Standard of Review**

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[10] A genuine issue of material fact exists when "a reasonable jury could return a verdict for the nonmoving party."[11] A district court must draw all inferences and resolve all doubts in favor of the nonmoving party.[12]

**Discussion**

Plaintiff filed a one count complaint alleging race-based employment discrimination in violation of Title VII of the Civil Rights Act of 1984, 42 U.S.C. §2000e, *et seq.*, and Defendant now moves for summary judgment on that claim. Title VII cases are analyzed under the three step burden-shifting framework set forth in McDonnell Douglas Corp. v. Green.[13] First, a plaintiff must set forth a *prima facie* case of discrimination. If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory

---

[9] Compl. ¶ 8.

[10] Fed. R. Civ. P. 56(c) (2010).

[11] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

[12] Id. at 255.

[13] 411 U.S. 792, 793 (1973).

3

reason for the employee's [discharge]."[14]  If the defendant meets its burden of production, the presumption of discrimination raised by the *prima facie* case is rebutted.[15]  However, the plaintiff may still succeed if he can establish that the defendant's proffered reasons were merely pretextual, and not the real motivation for the unfavorable employment action.[16]

*Prima Facie Case*

To make a *prima facie* case for race-based employment discrimination, the plaintiff must put forth evidence that he: (1) is a member of a protected class; (2) performed his job satisfactorily; (3) suffered an adverse employment action; and (4) that similarly situated employees outside the protected class received more favorable treatment.[17]  In its Motion, Defendant argues that although Plaintiff can establish the first three elements of its *prima facie* case, Plaintiff is unable to establish the fourth element.  That is, Plaintiff cannot establish that similarly situated employees outside of his protected class were treated more favorable than him.[18]  Plaintiff believes he has raised a genuine issue of material fact as to whether similarly situated Caucasian employees were treated more favorably than African-American employees.  The disagreement between the parties arises due to their use of different criteria for establishing

---

[14] McDonnell Douglas, 411 U.S. at 802.

[15] Tex. Dep't of Community Affairs v. Burdine, 450 U.S. 248, 255 (1981).

[16] Id. at 253.

[17] Burdine, 450 U.S. at 253-254.

[18] Def.'s Mot. for S.J., at 11.

4

the comparator group (*i.e.* determining which employees are "similarly situated") for the purposes of demonstrating disparate treatment.

Defendant argues in favor of limiting the analysis of similarly situated comparators to employees that: 1) engaged in drug activity; 2) had direct involvement with Defendant's student population; and 3) were terminated during or after 2006. Plaintiff opposes Defendant's criteria for selecting comparators, arguing that the appropriate class should include all employees[19] who were convicted of or admitted to any criminal offense proscribed by the Pennsylvania Crimes Code throughout Plaintiff's period of employment – 1992 through 2007.[20]

In determining the appropriate class of similarly situated employees, the plaintiff "cannot selectively choose a comparator."[21] In Houston v. Easton Area School District, the Third Circuit discussed the applicable standards for establishing a class of similarly situated employees,[22] observing that:

> To make a comparison of the plaintiff's treatment to that of an employee outside the plaintiff's protected class for purposes of a Title VII claim, the plaintiff must show that he and the employee are similarly situated in all *relevant* respects. See Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997) (collecting cases). The Supreme Court has held that evidence offered in a discrimination case concerning purported comparators with different supervisors is neither per se admissible nor per se inadmissible. See Sprint/United Mgmt. Co. v. Mendelsohn,

---

[19] Plaintiff asserts that the similarly situated class should include "employees who occupied positions of responsibility in connection with necessary operating functions within the Glen Mills structure." Pl.'s Reply in Opp'n to Def.'s Mot. for S.J., at 12. However, this is simply a verbose method of stating "all employees" of Glen Mills.

[20] Id.

[21] Simpson v. Kay Jewelers, 142 F.3d 639, 645 (3d Cir. 1998). In addition, the Third Circuit observed that a "plaintiff cannot pick out one comparator who was [treated unfavorably] amid a sea of persons treated the same as her to establish a jury question." Id. at 646 (quotations omitted).

[22] 2009 U.S. App. LEXIS 26756 (3d Cir. Dec. 8, 2009).

552 U.S. 379, 128 S. Ct. 1140, 1143, 170 L. Ed. 2d 1 (2008). We can glean from Mendelsohn that whether a factor is relevant for purposes of a similarly situated analysis must be determined by the context of each case.

In disciplinary cases or in the context of personnel actions, for example, the relevant factors often include a "showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617-18 (7th Cir. 2000). [23]

Thus, in order to establish an appropriate class of similarly situated comparators, Plaintiff must identify employees who share characteristics that are relevant to the facts of this case.[24]

The Court finds that while the comparator group selected by Plaintiff is too broad, the comparator group selected by Defendant is too narrow. Defendant maintains a "zero tolerance" policy against drug use by its employees, claiming that it cannot permit teachers and counselors to warn students about the dangers of drug use while they themselves are engaging in drug activity.[25] Defendant apparently does not maintain a "zero tolerance" policy as to other illegal conduct on the part of its employees. However, based on Defendant's proffered evidence, its anti-drug policy appears facially neutral and serves a valid, business-related purpose. The Court accepts Defendant's assertion that Mr. Ipock has implemented a "zero tolerance" policy prohibiting drug activity, and finds that those in violation of that policy are the correct comparator group in this case. However, the Court finds no reason to limit the group of comparators to those employees directly interacting with students (i.e. teachers and counselors),

---

[23] Id. at *9-11.

[24] Id.

[25] Aff. of Garrison D. Ipock, at 2.

6

as Defendant has failed to convince the Court that permitting drug use by administrative employees would be less damaging to its educational message. Therefore, the "relevant" class of comparators is all employees that have engaged in illegal drug use.

The Court also limits similarly situated comparators to those employees under the supervision of Mr. Ipock, as he implemented the policy against Plaintiff. Mr. Ipock became the Executive Director of Glen Mills School in November, 2007.[26] In the ten years prior to this promotion, Mr. Ipock served as Defendant's Managing Director. Beginning in 2006, he often stepped into the role of Executive Director when the then-Executive Director, Cosimo Ferrainola, became ill. Therefore, the Court considers the disciplinary decisions made by Mr. Ipock when he was performing the duties of the Executive Director or acting Executive Director.

Under this analytical framework, the class of similarly situated comparators includes two African-American employees, Plaintiff and John Jones,[27] who were both terminated for drug activity during the relevant period,[28] and no Caucasian employees.[29] One of Defendant's Caucasian employees, Rita Schlett, served as administrative officer and was convicted of

---

[26] Aff. of Garrison D. Ipock, at 1.

[27] Plaintiff asks the Court to consider Jeanne Thomas, a third African-American employee terminated due to a drug offense, but does not provide enough factual information for the Court to analyze whether she was similarly situated. For example, he does not include the date of the offense or her termination. Furthermore, it appears that her dismissal may have been required by state law.

[28] Pl.'s Reply in Opp'n to Def.'s Mot. for S.J., at 7. Mr. Jones, a teacher, was convicted of possessing illegal drugs in March 2006, and Defendant subsequently terminated his employment in May 2006. Id.

[29] Had the Court considered those similarly situated to be those who committed *any crime* under the leadership of Mr. Ipock, the list of comparators would be much the same, except that Damien Hangey would be included as a white employee who allegedly retained his employment after a conviction for simple assault in 2008.

possession of a controlled substance in May 2005.[30] Her father, Cosimo Ferrainolla, was the Executive Director at that time, and he did not terminate her employment.[31] Because her situation was handled by a different supervisor, who was also her father, the Court finds that she was not similarly situated to Plaintiff.[32]

*Legitimate, Non-Discriminatory Reason for Termination and Evidence of Pretext*

Even assuming, *arguendo,* that Plaintiff demonstrated a *prima facie* case, Defendant would still prevail. After Plaintiff established his *prima facie* case, the burden would shift to Defendant to articulate a legitimate, nondiscriminatory reason for Plaintiff's discharge. Defendant asserts that it terminated Plaintiff pursuant to its zero-tolerance policy with regard to staff drug use, a policy Defendant asserts is necessary in order to maintain credibility both with its students and with the agencies and government entities that fund the program.[33] Plaintiff does not deny that he was in possession of marijuana. This is sufficient to satisfy Defendant's burden.

To survive summary judgment, Plaintiff must then establish a genuine issue of material fact as to Defendant's actual motive.[34] He must submit evidence which: (1) casts sufficient doubt upon the legitimate reasons proffered by the defendant so that a factfinder could reasonably

---

[30] Id.

[31] Mr. Ipock did terminate Ms. Schlett after he became Executive Director, but only after Plaintiff filed the instant lawsuit.

[32] Another Caucasian employee, Raymond O'Malley, worked for Defendant after his 1996 drug conviction, but the Court does not find this employee to be similarly situated to Plaintiff. O'Malley's conviction occurred more than ten years prior to Plaintiff's admission of drug possession, and he was retained by a different Executive Director. There is nothing in the record regarding the prior Executive Director's policy on disciplinary action for drug-related crimes.

[33] Aff. of G. Ipock, at 1-2.

[34] Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000).

8

conclude that the reasons were a fabrication, or (2) allows the fact finder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action.[35]

Plaintiff's only evidence regarding Defendant's motive is the same evidence used to establish the *prima facie* case: *i.e.,* that similarly situated Caucasian employees were treated differently. However, the Court has found, *supra,* that the Caucasian employees Plaintiff points to are not similarly situated in all relevant respects. The Court has no evidence from which it can infer that Mr. Ipock treated Caucasian employees found to be in possession of illegal drugs more favorably than African-American employees.

The Court notes that Plaintiff worked for Defendant for approximately fifteen years, receiving promotions, raises, and performance bonuses. Other than his discharge after he admitted possessing marijuana, Plaintiff points to no acts of race-based employment discrimination committed by Defendant during his tenure at the school. Plaintiff is unable to "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence."[36] The Court sees no evidence that racial animus was more likely than not a motivating factor in Plaintiff's discharge.[37]

As Plaintiff has failed to establish a genuine issue of material fact, Defendant's Motion for Summary Judgment is granted. An appropriate Order follows.

---

[35] Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).

[36] Id. at 762.

[37] Id. at 762, 765.

9